IN THE CIRCUIT COURT OF THE 4th JUDICIAL CIRCUIT,
IN AND FOR CLAY COUNTY, FLORIDA

FABIAN MARSHALL and ATECIA
MARSHALL,

      Plaintiffs,

v.                                   CASE NO:

USAA GENERAL INDEMNITY COMPANY,

      Defendant.

_____/

### COMPLAINT

**COMES NOW** the Plaintiffs, FABIAN MARSHALL and ATECIA MARSHALL, by and through the undersigned counsel and hereby files this Complaint against the Defendant, USAA GENERAL INDEMNITY COMPANY (hereinafter "USAA"), and as grounds therefore states as follows:

1.     That this is an action for damages in excess of THIRTY THOUSAND DOLLARS ($30,000.00), exclusive of interest, attorney fees and costs, and is otherwise within the jurisdictional limits of this Court.

2.     That at all times material hereto the Defendant was an insurance company authorized to do business in the State of Florida and doing business in Clay County, Florida.

3.     That at all times material hereto Plaintiffs were and are a resident of Clay County, Florida, and is otherwise sui juris.

4.     That at all times material hereto, Defendant issued a policy of insurance, Policy No. **024840402/90A** on Plaintiffs' residence located 341 Glenlyon Drive, Orange Park, Florida 32073 ("Property"), which afforded various types of coverages including coverage for damage to

USAA Confidential

dwelling, other structures, personal property, and for loss of use. (See attached hereto as **Exhibit "A,"** the Policy.)

     5.     On or about 8/1/2020, the Property was damaged as the result of a wind / hail.

     6.     Defendant was given notice of the loss and assigned Claim Number 024840402-002 ("Claim").

     7.     Defendant inspected the Property and, in turn, the Loss in its investigation of the claim.

     8.     Defendant unilaterally undervalued the loss.

     9.     Defendant's unilateral evaluation of the claim was woefully insufficient to restore the insured premises and, as a result, the insureds retained a public adjuster and supplemented the claim.

**COUNT 1 – STATUTORY BAD FAITH DUE TO BREACH OF
SECTIONS 624.155 & 626.9541, FLORIDA STATUTES**

     10.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 9 as if fully set forth herein and further state:

     11.     By and through its initial adjustment of the Claim, Defendant knowingly under-adjusted the Claim.

     12.     As a condition precedent to bringing this action, on May 18, 2021, the Insureds filed a Civil Remedy Notice ("CRN") of Insurer Violation with the Department of Insurance and USAA GENEREAL INDMENITY COMPANY pursuant to Florida Statutes. The Florida Department of Insurance accepted the aforementioned Notice of Insurer Violation on May 18, 2021. (See attached hereto as **Exhibit "B,"** CRN filing number 560104.)

     13.     Pursuant to §624.155, Florida Statutes, Defendant was required to cure the allegations in the Civil Remedy Notice within sixty (60) days of the filing of same.

0901119cb412a6d8

USAA Confidential

14. USAA did not pay damages or cure the circumstances within sixty (60) days of the Notice of Acceptance by the Department of Insurance.

15. USAA is subject to Florida Statutes, Florida regulations and Florida law while it handles and adjusts claims on behalf of its insureds.

16. As Plaintiff filed a Civil Remedy Notice and Defendant failed to cure the violations with the cure period, Plaintiffs have fulfilled all necessary elements to maintain this cause of action.

17. Additionally, Plaintiffs complied with all prerequisites, whether denominated conditions precedent, duties after loss, or otherwise, to maintain the instant suit for statutory bad faith. Alternatively, Defendant has waived or never had standing to assert any prerequisites, whether denominated as conditions precedent, duties after loss, or otherwise.

18. As a result of Defendant's improper actions in the claims adjustment and improper claims handling, Plaintiffs sustained consequential and ensuing damages.

19. Defendant has violated Section 624.155(1)(b)(1), Florida Statutes, by not attempting in good faith to settle claims when, under all circumstances, it could have and should have done so, had it acted fairly and honestly toward its Insured and with due regard.

20. Defendant has violated Section 624.155(1)(b)(3), Florida Statutes, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

21. Defendant has violated Section 626.954(1)(i)(2), Florida Statutes, by making a material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement

USAA Confidential

of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy.

22.    Defendant has violated Section 626.9541(1)(i)(3)(a), Florida Statutes, by failing to adopt and implement standards for the proper investigation of claims.

23.    Defendant has violated Section 626.9541(1)(i)(3)(b), Florida Statutes, by misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.

24.    Defendant has violated Section 626.9541(1)(i)(3)(c), Florida Statutes, by failing to acknowledge and act promptly upon communications with respect to claims.

25.    Defendant has violated Section 626.9541(1)(i)(3)(d), Florida Statutes, by denying claims without conducting reasonable investigations based upon available information.

26.    Defendant has violated Section 626.9541(1)(i)(3)(i), Florida Statutes, by conducted unfair claim settlement practices.

27.    Defendant has violated Section 626.9541(1)(i)(3)(e), Florida Statues, by Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed.

28.    Defendant has violated Section 626.9541(1)(i)(3)(f), Florida Statutes, by Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement.

29.    Defendant has violated Section 626.9541(1)(i)(3)(g), Florida Statutes, by failing to promptly notify the Insured of any additional information necessary for the processing of a claim.

USAA Confidential

30.     Defendant has violated Section 626.9541(1)(i)(3)(h), Florida Statutes, by failing to clearly explain the nature of the requested information and the reasons why such information is necessary.

31.     Defendant's actions referenced above occur with such frequency as to indicate a general business practice and these acts were willful, wanton, malicious, and/or in reckless disregard for the rights of Plaintiffs; accordingly, Plaintiffs reserve the right to amend this Complaint to seek punitive damages against Defendants in accordance with the provisions of Sections 624.155 and 768.72, Florida Statutes.

32.     As a result of this dispute, it has become necessary that Plaintiffs retain the services of the undersigned attorneys.  Plaintiffs are obligated to pay a reasonable fee for the undersigned attorneys' services in bringing this action plus costs.  Plaintiffs are entitled to reimbursement of these fees and costs by Defendant subject to Sections 624.155, Florida Statutes.

33.     Should Plaintiffs prevail in this action, Plaintiffs shall be entitled to interest as prescribed by Florida law.

34.     Plaintiffs respectfully request that this Honorable Court enter an Award of general compensatory damages, consequential damages, bad faith damages including all extra-contractual damages permissible by law, pre/post-judgement interest, attorneys' fees and costs including a contingency fee multiplier, and any and all other relief deemed just and proper.

35.     That the Defendant's refusal to pay the full amount of the claim was contrary to the terms of the policy and/or Florida law and was a breach of said contract of insurance.

36.     The Plaintiffs have been damaged by the Defendant's breach of said contract of insurance by having not been compensated for the damage sustained to the building on the subject property, damage to contents, and loss of use of the property and possessions taken from therein.

USAA Confidential

37.    That as a direct and proximate result of the Defendant's refusal to pay the Plaintiffs' claim, the Plaintiffs have been required to retain the services of the undersigned attorneys to represent and protect the Plaintiffs' interests and Plaintiffs have become obliged to pay them a reasonable fee for their services in bringing this action.

38.    In the event that the Plaintiffs prevails in this action, Plaintiffs are entitled to an award of attorney fees and costs pursuant to Florida Statute Section 627.428, 626.9373 or other Florida law.

WHEREFORE, the Plaintiffs, FABIAN MARSHALL and ATECIA MARSHALL, demands judgment against the Defendant, USAA GENERAL INDEMNITY COMPANY, general and special damages; consequential damages; bad faith damages including all extra-contractual damages permissible by law; reasonable attorneys' fees and costs; costs of this suit; interest and pre-judgment interest, a trial by jury on all issues so triable, and any and all such other relief as the Plaintiffs may be justly entitled.

## JURY DEMAND

39.    Plaintiffs, FABIAN MARSHALL and ATECIA MARSHALL, hereby demands a trial by jury on all issues so triable by right.

Dated this 17th day of November, 2022.

Respectfully Submitted,

By:    /s/ Jeremy T. Schilling
       JEREMY T. SCHILLING, ESQ.
       Florida Bar No: 0098111
       AARON D. SILVERS, ESQ.
       Florida Bar No: 104811
       Schilling & Silvers PLLC
       1700 NW 64th St., Suite 460
       Fort Lauderdale, FL 33309
       T: 954-712-8877
       Email: jschillings@schillingsilvers.com
              daadams@schillingsilvers.com

USAA Confidential

## HOMEOWNERS POLICY PACKET

EFFECTIVE: 07-22-20 TO: 07-22-21

FABIAN I MARSHALL
PO1 USN
PSC 473 BOX 4578
FPO AP 96349-0046

GIC     02484 04 02     90A

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

1) USAA considers many factors when determining your premium. Maintaining your property to reduce the probability of loss is one of the most important steps you can take toward reducing premium increases. A history of claim activity will affect your policy premium.

2) Go to usaa.com to view policy coverages and home features.

3) Additional coverage for fungus or mold is available on your policy. Please read the "Additional Mold Coverage Available on Your Florida Homeowners Policy" notice attached.

4) Florida has passed a bill establishing an annual hurricane deductible. As a result, we will apply a calendar year hurricane deductible to all Florida homeowners and fire policies for any hurricane losses which occur after May 1, 2005. Please refer to the Florida Calendar Year Hurricane Deductible Notice for details.

5) Your policy does NOT cover loss due to flood from any source. For information about obtaining flood coverage from the National Flood Insurance Program (NFIP), call USAA at (800) 531-8722, or contact the NFIP directly.

   If you already have a flood policy, you should review it to make sure you have the appropriate coverage and limits. No automatic increases or adjustments are applied to your policy. Coverage for loss of household contents due to flood may be available at an additional cost. If you have questions, please call a member service representative at the phone number above.

(CONTINUED ON NEXT PAGE)

This is not a bill. Any premium charge or return for this policy will be reflected on your next regular monthly statement.

**To receive this document and others electronically or view your policy summary online, go to usaa.com.**

For U.S. Calls: Policy Service (800) 531-8111. Claims (800) 531-8222.

HOCS1

**Exhibit "A"** 49709-0406

0901119cb412a6d8

USAA Confidential

THIS PAGE INTENTIONALLY LEFT BLANK

0901119cb412a6d8

USAA Confidential

## HOMEOWNERS POLICY PACKET CONTINUED

6) YOUR POLICY PROVIDES COVERAGE FOR A CATASTROPHIC GROUND COVER COLLAPSE THAT RESULTS IN THE PROPERTY BEING CONDEMNED AND UNINHABITABLE. OTHERWISE, YOUR POLICY DOES NOT PROVIDE COVERAGE FOR SINKHOLE LOSSES. YOU MAY PURCHASE ADDITIONAL COVERAGE FOR SINKHOLE LOSSES FOR AN ADDITIONAL PREMIUM.

7) Florida law allows you to make changes to your policy coverages and select new payment options. Please review the enclosed "Florida Coverage Options" information sheet for details.

8) Your attached policy includes a charge for the Florida Hurricane Catastrophe fund (FHCF) Assessment, which provides funds to pay FHCF obligations resulting from the previous hurricane seasons. The FHCF charges are reflected on your Declarations page.

0901119cb412a6d8

USAA Confidential

USAA GENERAL INDEMNITY COMPANY
9800 Fredericksburg Road - San Antonio, Texas 78288

HOMEOWNERS POLICY DECLARATIONS

# THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

CATALOG-NUMBER
131565-0916
Page 1 of 1

HOFL-D1 (09-16)

0901119cb412a6d8

USAA Confidential

**USAA GENERAL INDEMNITY COMPANY**
9800 Fredericksburg Road · San Antonio, Texas 78288
HOMEOWNERS POLICY DECLARATIONS

| Named Insured and Residence Premises | Policy Number |
|---|---|
| FABIAN I MARSHALL AND ATECIA S MARSHALL | GIC   02484 04 02  90A |

341 GLENLYON DR
ORANGE PARK, CLAY, FL  32073-4272

Policy Period From: 07/22/20    To: 07/22/21
(12:01 A.M. standard time at location of the residence premises)

### SECTION I - COVERAGES AND AMOUNTS OF INSURANCE
| | |
|---|---|
| COVERAGE A - DWELLING PROTECTION | $497,000 |
| COVERAGE B - OTHER STRUCTURES PROTECTION | $49,700 |
| COVERAGE C - PERSONAL PROPERTY PROTECTION | $248,500 |
| COVERAGE D - LOSS OF USE PROTECTION (UP TO 24 MONTHS) | $99,400 |

### SECTION II - COVERAGES AND LIMITS OF LIABILITY
| | |
|---|---|
| Personal Liability – Each Occurrence | $500,000 |
| Medical Payments to Others | $5,000 |

### DEDUCTIBLES  (Applies to SECTION I Coverages ONLY)
We cover only that part of the loss over the deductible stated.

| HURRICANE | **2%   HURRICANE   = $9,940** |
|---|---|
| ALL OTHER PERILS | $2,000 |

| | |
|---|---|
| **POLICY PREMIUM** for Section I and Section II Coverages Above | $2,523.48 |
| **CREDITS AND DISCOUNTS** (Included in policy premium above.) Details on the following page. (If applicable) | $1,321.99 CR |

**OTHER COVERAGES AND ENDORSEMENTS**
Form and Endorsements are printed on the following page.

| **STATE SURCHARGES AND TAXES** FL SURCHARGES ARE PRINTED ON THE FOLLOWING PAGE. | $198.83 |
|---|---|

**PREMIUM SUMMARY**

| | |
|---|---|
| **NON-HURRICANE PREMIUM** | $909.99 |
| **HURRICANE PREMIUM INCLUDING FHCF** | $1,799.06 |

**TOTAL POLICY PREMIUM INCLUDING SURCHARGES**
Including Credits, Discounts, Optional Coverages, Endorsements, State Surcharges and Taxes

$2,722.31

PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL. STATEMENT TO FOLLOW.

**FIRST MORTGAGEE:**
NAVY FEDERAL CREDIT UNION AND/OR THE SECRETARY OF     LOAN NR     8041509442
VETERANS AFFAIRS, ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 100598
FLORENCE, SC 29502-0598

COUNTERSIGNED BY AGENT
In Witness Whereof, this policy is signed on 07/14/20

Deneen Donnley, Secretary   S.Wayne Peacock, President

REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.

USAA Confidential



USAA GENERAL INDEMNITY COMPANY
HOMEOWNERS POLICY DECLARATIONS

**Policy Number**   **Policy Term:**   07/22/20   07/22/21
GIC   02484 04 02   90A                Inception   Expiration

**POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.**

POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.

| | | |
|---|---|---|
| QR3GIC | (07-08) | QUICK REFERENCE-SPECIAL FORM |
| HO-3RFL | (09-16) | HOMEOWNERS SPECIAL FORM |
| HO-FL | (06-18) | FLORIDA SPECIAL PROVISIONS |
| HO-SLS3FL | (05-16) | SPECIAL LOSS SETTLEMENT |
| FL271 | (02-16) | HURRICANE DEDUCTIBLE ENDORSEMENT |
| HO-CGCC | (08-16) | CATASTROPHIC GROUND COVER COLLAPSE |
| HO-125FL | (09-16) | HOME PROTECTOR |
| HO-208FL | (12-15) | WATER BACKUP OR SUMP PUMP OVERFLOW |
| HO-225FL | (12-15) | BUILDING ORDINANCE OR LAW COVERAGE (25%) |
| HO-728FL | (05-16) | REPLACEMENT COST COVERAGE |
| 219 | (05-16) | BUILDING CODE CREDIT |

YOUR PREMIUM HAS BEEN REDUCED BY THE FOLLOWING CREDITS AND DISCOUNTS:

| | |
|---|---|
| CLAIMS FREE DISCOUNT | $194.17 CR |
| HOME AGE DISCOUNT | $218.11 CR |
| PROTECTIVE DEVICE CREDIT | $0.21 CR |
| BUILDING CODE CREDIT | $909.50 CR |

SPECIFICALLY LISTED BELOW ARE SURCHARGES.

| | |
|---|---|
| EMERGENCY MANAGEMENT FUND | $2.00 |
| FL HURRICANE CATASTROPHE FUND (FHCF) PREMIUM RECOUPMENT | $196.83 |

0901119cb412a6d8

USAA Confidential



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:    **560104**

Filing Accepted:    **5/18/2021**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **ANDREW RIVER CITY CLAIMS** |
| Street Address: | **450 STATE ROAD 13 N. SUITE 106 PMB 403** |
| City, State Zip: | **ST. JOHNS, FL  32259** |
| Email Address: | **ANDREW@RIVERCITYCLAIMS.COM** |
| Complainant Type: | **Third Party** |

### Insured

| | |
|---|---|
| Name: | **FABIAN MARSHALL** |
| Policy #: | **024840402/90A** |
| Claim #: | **024840402-002** |

### Attorney

| | |
|---|---|
| Name: | |
| Street Address: | |
| City, State Zip: | , |
| Email Address: | |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **USAA GENERAL INDEMNITY COMPANY** |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**GARY COLLINS AND ANY AND ALL ADJUSTERS, SUPERVISORS, MANAGEMENT, ATTORNEYS AND INDIVIDUALS ASSOCIATED WITH OR RETAINED BY USAA INSURANCE INVOLVED WITH THE HANDLING OF THIS CLAIM. ADDITIONALLY, CHARLES THOMAS WITH ALLCAT CLAIMS SERVICE.**

Type of Insurance:    **Residential Property & Casualty**

# Exhibit "B"

DFS-10-363
Rev. 10/14/2008

USAA Confidential



## Civil Remedy Notice of Insurer Violations

Filing Number:    560104

### Reason for Notice

Reasons for Notice:

     **Claim Denial**

     **Claim Delay**

     **Unsatisfactory Settlement Offer**

     **Unfair Trade Practice**

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| 624.155(1)(b)(1) | Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests. |
| 624.155(1)(b)(3) | Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. |
| 626.9541(1)(i)(2) | A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy. |
| 626.9541(1)(i)(3)(a) | Failing to adopt and implement standards for the proper investigation of claims. |
| 626.9541(1)(i)(3)(b) | Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue. |
| 626.9541(1)(i)(3)(c) | Failing to acknowledge and act promptly upon communications with respect to claims. |
| 626.9541(1)(i)(3)(d) | Denying claims without conducting reasonable investigations based upon available information. |
| 626.9541(1)(i)(3)(e) | Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed. |
| 626.9541(1)(i)(3)(f) | Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. |
| 626.9541(1)(i)(3)(g) | Failing to promptly notify the insured of any additional information necessary for the processing of a claim. |
| 626.9541(1)(i)(3)(h) | Failing to clearly explain the nature of the requested information and the reasons why such information is necessary. |
| 626.9541(1)(i)(3)(i) | Unfair claim settlement practices |

DFS-10-363
Rev. 10/14/2008

0901119cb412a6d8

USAA Confidential

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

See Subject Policy:
USAA Insurance Policy No.: 024840402/90A
Specific policy language that is relevant to the violations set forth herein includes the following sections:
Under the DECLARATIONS PAGE - SECTION I – PROPERTY COVERAGE (The section identifies the fact there is coverage for the Dwelling and the applicable limits of coverage.)
...Under SECTION I - DEFINITIONS, specifically the definition of "occurrence" and the definition of "property damage" .
Under SECTION I – COVERAGE A – DWELLING: 1. Dwelling. We cover the dwelling used principally as a private residence on the residence premises shown in the Declarations.
Under SECTION I – COVERAGE B - PERSONAL PROPERTY 1. Property Covered. We cover personal property owned or used by an insured while it is anywhere in the world. There includes structures not permanently attached to or otherwise forming a part of the realty.
Under SECTION I - COVERAGE C - LOSS OF USE 1. Additional Living Expense. When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months.
Under SECTION I – ADDITIONAL COVERAGES ... 2. Temporary Repairs. If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. There coverage does not increase the limit applying to the property being repaired.
Under SECTION I – PERILS INSURED AGAINST
We insure for accidental direct physical loss to the property described in Coverage A and B, except as provided in SECTION I - LOSSES NOT INSURED.
Under the LOSS SETTLEMENT section, and LOSS PAYMENT section of the Policy. Particularly, the section that states "We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment."

---

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

Additional pertinent statutes relative to this Notice:

627.70131 (1)(a) Upon an insurer's receiving a communication with respect to a claim, the insurer shall, within 14 calendar days, review and acknowledge receipt of such communication unless payment is made within that period of time or unless the failure to acknowledge is caused by factors beyond the control of the insurer which reasonably prevent such acknowledgment. If the acknowledgment is not in writing, a notification indicating acknowledgment shall be made in the insurer's claim file and dated. A communication made to or by an agent of an insurer with respect to a claim shall constitute communication to or by the insurer.

627.70131(3) Unless otherwise provided by the policy of insurance or by law, within 10 working days after an insurer receives proof of loss statements, such insurer shall begin such investigation as is reasonably necessary unless the failure to begin such investigation is caused by factors beyond the control of the insurer which reasonably prevent the commencement of such investigation.

627.70131(5)(a) Within 90 days after an insurer receives notice of an initial, reopened, or supplemental property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment.

627.4137(1) Each insurer which does or may provide liability insurance coverage to pay all or a portion of any claim which might be made shall provide, within 30 days of the written request of the claimant, a statement, under oath, of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance: (a) The name of the insurer. (b) The name of each insured. (c) The limits of the liability coverage. (d) A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement. (e) A copy of the policy.

Facts and circumstances giving rise to the violation.

Fabian Marshall (the "Insured") purchased a policy of insurance to cover Fabian Marshall's home and

personal property located at 341 Glenhyon Drive Orange Park, FL (the "Property") from USAA Insurance (hereinafter "USAA"). USAA issued the Insured a policy of insurance that also covered the Property under policy number 024840402/90A ("Policy"). The Policy was in effect on or about 8/1/2020, when the Insured sustained a loss at the Property in Orange Park, Florida. The property damage sustained was significant – damaging a considerable amount of the roof system and other parts of the home. The Insured immediately reported the loss to USAA, who assigned it claim number 024840402-002 ("Claim"). USAA then assigned the adjustment of the Claim to its adjusters and began its investigation of the loss. Fabian Marshall, fully cooperated and presented the claim to the field adjuster who was tasked with the investigation and handling the loss on behalf of USAA. USAA, through its representatives, scheduled to inspect the damaged Property. The expert for USAA, Charles Thomas with Allcat Claims Service, inspected the Property. Unfortunately, the first inspection set the stage for what would prove to be an inspection process in violation of both the statutory guidelines for all insurance adjusters as well as the standards identified in Florida's administrative code regulating the adjustment of insurance claims. In other words, it was a sham inspection – intended to find a way for the Insurer to escape liability instead of finding coverage for the Insured. More specifically, Charles Thomas, working at the direction of the USAA, noted "No storm related damages". Yet he acknowledged multiple locations of ensuing damage and opened coverage on the interior of these areas, albeit marginally. He overlooked the wet decking and extensive hail damage to the roof. Consequently, the roof claim was denied. Mr. Thomas' findings were made without adequate investigation and without adequate direction from USAA.

Aside from the fact the damage was in fact caused by hail and windstorm (at least in part), evidenced by available weather reports, visible damage to the roof as documented in the PA's estimate and the fact that numerous neighboring properties also sustained similar damage, USAA improperly denied coverage. USAA Insurance's failure to properly adjust the claim began when it engaged an outcome-oriented expert and USAA intentionally failed to provide the correct inspection parameters for Mr. Thomas with regard to a causation determination. Here's why... USAA failed to inform Mr. Thomas of Florida's concurrent cause doctrine and how it applies to the Policy at issue. Had it done so, Mr. Thomas's findings would have been different. Mr. Thomas would have considered all causes of loss that contributed to the loss, not just one or two. Understand, without question hail damage was identified on the architectural shingle roof. However, Mr. Thomas ignored this particular cause of damage and focused on other causes. He did so to aid USAA in its effort to avoid liability. As a result, USAA summarily decided the roof portion of the Claim was not covered under the Policy despite considerable evidence having been available at the time of his inspection that would indicate otherwise.

Sadly, USAA's go-to "hired guns" routinely provide it with reports that fall squarely in line with its financial objectives to pay less on claims or avoid paying altogether. If one were to ask USAA how many times it employed this Charles Thomas with Allcat Claims Service before, what its opinions of those other claims were, and the ultimate disposition of those other claims, the results would be shocking to most consumers. Here's why... USAA hired Allcat Claims Service on hundreds of other cases prior to this one and obtained reports (almost always) that were favorable to it and denying coverage. Then, when those results were challenged, USAA would ultimately change its position and pay the claims. What is dumbfounding is why USAA keeps using these same experts. After all, if one went to a doctor and was misdiagnosed, one would probably not return. Imagine hundreds of misdiagnosed cases and still going back for more opinions! Clearly, no reasonable individual would keep going back – unless, as in this case, USAA wants the outcome-oriented expert to provide it with the report it wants to deny coverage. (Which is clearly the case and a textbook bad-faith claims handling practice.)

Now imagine if that doctor never returned your phone call. How are you supposed to receive treatment? USAA had an obligation to respond and communicate with the Insured in a timely manner. USAA has failed to communicate with the Insured, ignoring its repeated request for assistance with the Claim, causing the insured to have to hire a Public Adjuster.

The insured, through his public adjuster, sent a letter of representation to the carrier on December 23, 2020 1:55 pm. It stated:
"Please consider this our formal request for the following items. This request includes those documents you have available now and those that will become available throughout the claim process, as follows:
-Certified copy of the insurance policy including all forms and endorsements as well as the declaration page. This request is imperative so that we may promptly adjust the loss and in an effort to comply with any post loss obligations of the insured. The insured reserves any and all rights it may have under the policy to fulfill post loss obligations due to any failure by you to promptly submit a certified copy of the policy in a timely manner.
-Copies of any and all estimates for damages already prepared by the insurer and/or its agents.
-Name, mailing address, email address, fax and phone number of the claim's examiner, field adjuster and any other insurer rep that has been assigned to this claim.

USAA Confidential

-An updated claim payment history each time any payment is made on this claim.
-A transcribed copy, as well as an actual copy of any and all recorded statements taken of the insured or anyone in connection with this loss.
-A copy of any and all correspondence to and from the insured regarding this loss.
-Please notify our firm if there are any post loss obligations of the insured that need to be completed or provided to you."

None of this information has been provided by USAA to date. According to 627.70131(1)(a) The carrier had a duty to acknowledge that communication within 14 days and failed to do so. And 627.4137(1)(e) requires the Carrier to "within 30 days of the written request of the claimant" provide a copy of the Certified policy.

Mr. Marshall, through his public adjuster, prepared an estimate and proof of loss and submitted it to the carrier on Thursday, March 4, 2021 1:24 PM. This letter stated:

"Enclosed please find Fabian & Atecia Marshall's River City Claims Estimate and executed Sworn Statement in Proof of Loss. Please review the Estimate and Proof of Loss and contact me within the next fourteen (14) days should USAA Insurance have any questions or concerns about the Proof of Loss.

Should we not hear from your office in the next fourteen (14) days, we will assume that USAA has completed its investigation and has all of the necessary information and documentation from the Insured to make an informed decision on Fabian I. Marshall's Sworn Statement in Proof of Loss.

Further, should we not hear from USAA Insurance within 60 days of its receipt of the Sworn Statement in Proof of Loss, we will assume the Sworn Statement in Proof of Loss has been accepted in form and content by the company.

I look forward to working with you to resolve this matter for the benefit of the insured as soon as possible."

Here again 627.70131(1)(a), (3) creates a duty to acknowledge that communication within 14 days and "Unless otherwise provided by the policy of insurance or by law, within 10 working days after an Insurer receives proof of loss statements, the Insurer shall begin such investigation as is reasonably necessary…" The carrier was required to start their investigation within 10 day of that email. Again USAA has failed to do so. Upon receipt of the LOR, USAA was also required to "(Within 90 days after an insurer receives notice of an initial, reopened, or supplemental property insurance claim from a policyholder, the Insurer shall pay or deny such claim or a portion of the claim unless the failure to pay is caused by factors beyond the control of the Insurer which reasonably prevent such payment." Here again, USAA failed to acknowledge and act promptly upon communications with respect to claims. Over 4 months later and USAA still has not rendered a coverage determination as outlined in 627.70131(5)(a)

Pursuant to Florida Statute §624.155(1)(b)(1), the Insurer, USAA, has a duty to attempt, in good faith, to settle claims when, under all these circumstances, it could and should have done so, had it acted fairly and honestly towards the Insureds and with due regard for their interests. USAA has breached these duties in the handling of the Claim for, inter alia, financial gain and profit. USAA did so when it refused to pay the Claim (knowing it should have evaluated the loss differently with qualified experts). Consequently, USAA has violated Florida Statute §624.155(1)(b)(1). It would seem that USAA is indifferent to the needs of loyal customers, whose insurance premiums it did not hesitate to collect. USAA had the duty to investigate and settle the Insureds' Claim in an honest manner and according to the coverage provided under the Policy and pay the Insureds the benefits they would objectively be entitled to for the repairs under the terms and conditions outlined in the Policy and under Florida law. It has not done so. What USAA did was deny the Claim without conducting a reasonable investigation with qualified and competent adjusters and experts - despite the fact that the evidence clearly shows the roof was damaged by a covered cause of loss. This unfair and unsupported denial of the Claim is evidence that USAA has mishandled the Claim and its conduct is nothing less than common bad-faith claims handling practices.

Pursuant to Florida Statute §626.9541(1)(i)(3)(a), USAA had a duty to adopt and implement standards for the proper investigation and settlement of claims. It is clear from the facts in this case that USAA was ill equipped to handle the Claim. The representatives sent to the Property by USAA failed to correctly attribute the proper scope of damage resulting from the storm and have failed to report the proper repairs needed.

Both the Florida Statutes and Florida Administrative Code set forth comprehensive requirements for insurance companies and insurance adjusters regarding the adjustment of insurance claims. Generally, there is a common theme that sounds throughout these various laws and rules - one that requires

USAA Confidential

ethical behavior on the part of insurers and their adjusters so as to provide fair treatment to insureds, and for quick adjustment, payment, and resolution of claims. These principles are generally refined, condensed, and reflected in Rule 69B-220.201 of the Florida Administrative Code (entitled "Ethical Requirements"), which states, in part: "the work of adjusting insurance claims engages the public trust." The relevant laws and rules mandate fair and honest treatment of insureds and requires that insurance adjusters behave with integrity. More specifically, Florida Administrative Code 69B-220.201(3) states:"[a]n adjuster shall put the duty for fair and honest treatment of the claimant above the adjuster's own interests in every instance." This is consistent with the Florida Statutes which states that an adjuster has a duty to attempt in good faith to resolve claims and act fairly and honestly toward an insured with due regard for the interests of the insured, as well as Florida Administrative Code 698-220.201(3)(e), which states that adjusters are required to "handle every adjustment and settlement with honesty and integrity, and allow a fair adjustment or settlement to all parties…". Florida Administrative Code 69B-220.201(3)(c) states "[a]n adjuster shall not approach investigations, adjustments, and settlements in a manner prejudicial to the insured. And Florida Administrative Code 69B-220.201(3)(d) states that insurance adjusters are required to "make truthful and unbiased reports of the facts after making a complete investigation." USAA has violated these rules and statutes when it mishandled the adjustment of this Claim. More specifically, it did so when USAA's representatives misled the Insured as to the coverage available under the Policy. It did so when it denied and needlessly delayed the claim, placing hurdles before the Insured that only served to thwart the Insured in its attempt to recover. These wrongful acts were perpetrated in USAA's shameful effort to improve its bottom line by denying a legitimate claim.

Florida law also requires insurers and adjusters to act in a manner that effectuates the quick resolution of claims. Florida Administrative Code 69B-220.201(3)(f) states "[a]n adjuster, upon undertaking the handling of a claim, shall act with dispatch and due diligence in achieving a proper disposition of the claim." USAA did not do so, rather it needlessly delayed the claim when it delayed matters for weeks for no good reason – other than to try and gain leverage over the Insured, tire the insured out, and hope Fabian Marshall gives up. Florida law further mandates that insurers and adjusters not mislead the Insured. Florida Administrative Code 69B-220.201(3)(j) prohibits adjusters from knowingly failing to advise claimants of their options in accordance with the terms and conditions of the insurance contract. Here again, USAA failed when it ignored the Hail damage and the associated repairs. Florida Statute §626.9744 Claim settlement practices relating to property insurance. More specifically the requirement to match. The statute states "[w]hen a loss requires replacement of items and the replaced items do not match in quality, color, or size, the insurer shall make reasonable repairs or replacement of items in adjoining areas. In determining the extent of the repairs or replacement of items in adjoining areas, the insurer may consider the cost of repairing or replacing the undamaged portions of the property, the degree of uniformity that can be achieved without such cost, the remaining useful life of the undamaged portion, and other relevant factors." USAA not only misled the Insured regarding the Coverage of the roof but likely did so in order to avoid the requirement matching of the roofing, it went as far as to contradict the requirements of the policy and the statute – again to increase its profits at Fabian Marshall's expense. Insurance companies that fail to follow these Florida laws and regulations, designed to protect consumers, not only breach their duties under the policy of insurance, but do so in bad faith. Property insurers operating in Florida have the duty to adopt and implement standards for the proper investigation of claims. Florida Statute §626.9541(1)(i)(3)(a) requires insurers to adopt and implement standards for the proper investigations of claims. Failing to do so, as well as implementing the incorrect standards and improper means of investigation, is evidence of bad faith claims handling by the insurer. In this case, USAA not only ignored the public adjuster's findings, but upon information and belief instructed its claim representative to mislead the Insured regarding the cause of loss and the necessary scope of work required to effect repairs. Doing so was a clear violation of the statute. Had it implemented the proper standards for claim investigation this may not have occurred, and the Insured may not have had his claim denied.

The Insured, Fabian Marshall, was a dutiful customer who made it a priority to pay the insurance premium in order to ensure that in such an event his property would be covered. Fabian Marshall fulfilled all of the post-loss obligations. USAA and its representatives, to date, have failed at every step of the process to adequately establish or identify the basis of its gross undervaluation of the Claim, and has failed to provide the Insured with qualified representatives to ensure the Claim is adjusted properly. To deny the Insureds the benefit of their bargain, after they have satisfied all of their obligations, is morally and ethically reprehensible, and reeks of Unfair Settlement and Trade Practice. Moreover, upon information and belief, USAA has implemented a claims program and business practices that are tailored to increase its profits at the expense of benefits that are owed to its customers. Consequently, these actions have resulted in much frustration for the Insureds.

As a direct and proximate result of USAA's handling of this Claim, the Insured sustained extracontractual damages. And, upon information and belief, the aforementioned actions complained of herein, among others, were made by USAA so often as to constitute a general business practice - evidencing a motive to enhance USAA's profits and designed to cause a detrimental effect to its policyholders. Under the terms of

0901119cb412a6d8

USAA Confidential

the Policy, the Insured is entitled to the insurance benefits (less the applicable deductible) that would return their Property, meaning the home, to its pre-loss condition and the associated reasonable costs to reside outside the home while repairs are made, including the associated moving and packing costs. Therefore, it is only equitable that USAA tender full payment under the policy in order to repair the property to its pre-loss condition in a timely manner and agree to indemnify the Insured for the reasonable costs to reside outside the home while repairs are made to it - as it is contractually bound to do.

The aforementioned actions complained of in this Civil Remedy Notice demonstrate how USAA failed to comply in good faith with the terms and conditions of the Policy and/or its statutory duties of good faith.

This notice is given in order to perfect the right to pursue the civil remedy authorized by Section 624.155, Florida Statutes, should USAA fail to cure the violations set forth in this Civil Remedy Notice within the given cure period.

Notwithstanding the above, to cure the defects outlined in this Civil Remedy Notice, USAA must do the following:

(1) Create and implement adequate guidelines for proper investigation and evaluation as to claims handling and for the training and supervision of employees, which will avoid future statutory violations as set forth above, and above to avoid this from occurring in the future;

(2) USAA must create and implement adequate guidelines for the proper investigation and evaluation of these type of claims, and for the training and supervision of employees with regard to these types of claims to ensure that USAA's claims handling procedures with regard to these types of losses are adequate to stop further Insureds from being treated unfairly and wrongfully;

(3) USAA must assist the Insureds in mitigating their damages;

(4) USAA must act fairly and honestly towards the Insureds and with due regard for their interests in attempting to resolve the Insureds' claim;

(5) USAA must immediately tender all insurance proceeds due and owing the Insureds for the fair value of their claim which is fairly owed under their insurance policy that would reasonably place the Insureds back to a pre-loss condition;

(6) USAA must agree to reimburse the Insureds for their expenses incurred by having to retain a public adjuster or legal counsel and their own experts to present their claim; and

(7) USAA must pay for the damages sustained to the home provided to the carrier in the public adjuster's estimate, in accordance with the Policy that would reasonably place the Property back to the pre-loss condition – including any mitigation and the reasonable cost to replace the roof and repair the ensuing damage, subject to deduction for the policy deductible and applicable depreciation (if any), plus statutory pre-judgment interest pursuant to Florida Statute Section 627.70131 and/or Section 55.03.

Or, in the alternative, should USAA not be in agreement with the Insureds' reasonable demand for payment of their rightfully owed insurance benefits being submitted at this time, the Insureds are still willing to consider and potentially accept a reasonable counter-offer made by USAA. As such, the Insureds hereby request that USAA now make a reasonable counter-offer to the insured's Public Adjuster before the expiration of the cure period should it not agree to pay the full amount of the Insureds' demand, which includes the remainder of their estimate after prior payments, plus pre-judgment interest, public adjuster and/or attorney's fees and costs. The Insureds still hope that this claim can be resolved amicably. Failure to cure the defects as described herein will result in additional extra-contractual damages.

**Comments**

| User Id | Date Added | Comment |
|---|---|---|

DFS-10-363
Rev. 10/14/2008

0901119cb412a6d8

USAA Confidential